Joseph C. Rosenblit, SBN:131663
33801 Avenida Calita
San Juan Capistrano, CA 92675
949-412-6666, rosenblitlawyer@gmail.com

Denise Tessier-Gluzerman, SBN:196745
777 E. Tahquitz Canyon Way Suite 200-78
Palm Springs CA 92262
760 969-5078, gluzerman@legal.occoxmail.com

Attorneys for: Raymond Villagomez, Iris Mendez, Ciannah Villagomez, And Nathan Villagomez,a minor,
Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF YARETH AGUILAR VILLAGOMEZ,RAYMOND VILLAGOMEZ, IRIS MENDEZ, CIANNAH VILLAGOMEZ, AND NATHAN VILLAGOMEZ,a minor<br><br>                    Plaintiffs,<br><br>              vs<br><br>COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; ALYSSA VERNAL; and DOES 1 through 100, individually, jointly and severally,<br><br>Defendants.<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs and Practices Causing Constitutional Violations (Monell, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Intentional Infliction of Emotional Distress;<br>11. Declaratory Relief (28 U.S.C. § 2201)<br>DEMAND FOR JURY TRIAL |

- 1 -
**COMPLAINT**

**I.**

**INTRODUCTION**

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of detainee Yareth Aguilar Villagomez on June 20, 2022, at the Riverside County Correctional Facility known as Smith Correctional Facility. This action also seeks to help bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2. Yareth Aguilar Villagomez was a 40-year-old loving mother and wife, who wanted nothing more in the world than to be with and take care of her family. She was described by her family as a woman who was hard-working, caring, protective, responsible, and above all else, loving. She'd had careers in finance, and the law.  However, for all her ambition and hard work, she was stricken with Bipolar Schizophrenia and had been fighting that condition which had led to her drug addiction and ultimately her confinement at the Smith Correctional Facility.  Her death has been a profound and unimaginable loss to her three children and her beloved husband, the present Plaintiffs.



**The VillaGomez Family**

3. In 2022, 18 individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last 15 years. In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in record-breaking in-custody deaths. The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

4. Long before Yareth Aguilar Villagomez's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

5. The individuals named in the present lawsuit were repeatedly put on notice of great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action Quinton Gray, et al. v. County of Riverside, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounted to constitutional violations; a court-ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of

the deficiencies addressed in the Gray class action.

6. Despite this long history of complete disregard for inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Yareth Aguilar Villagomez was taken into custody and placed at the Smith Correctional Facility, the jail was infested with endemic, ongoing, and unabated risks of injury or death to inmates – risks which indeed resulted in Yareth Aguilar Villagomez's death on June 20, 2022, at the **Larry D. Smith Correctional Facility** (hereinafter alternatively referred to as "SMITH") located at 1627 S. Hargrave Street, Banning, CA 92220.

## II.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

8. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

9. Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

10. Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

**COMPLAINT**

11. With respect to these supplemental state claims, the Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**IV.**

**PARTIES**

**A. Plaintiffs**

12. Decedent Yareth Aguilar Villagomez was a 40-year-old wife and mother of three. At the time of her death, she was serving time for a drug-related offense and had resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF YARETH AGUILAR VILLAGOMEZ are brought by the successors in interest, Raymond Villagomez, Iris Mendez, Ciannah Villagomez, And Nathan Villagomez,a minor.

13. Plaintiff Nathan Villagomez., a minor by and through his Guardian Ad Litem, Raymond Villagomez, is and was, at all times relevant hereto, a resident of the County of Riverside, California, and was the natural son of decedent Yareth Aguilar Villagomez. Plaintiff Nathan Villagomez was 15 years old when his mother, Yareth Aguilar Villagomez, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of Decedent Yareth Aguilar Villagomez based on 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

14. Plaintiff Ciannah Villagomez, a resident of the County of Riverside, California, was the natural daughter of decedent Yareth Aguilar Villagomez.  Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of

- 5 -
**COMPLAINT**

Decedent Yareth Aguilar Villagomez on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.

15. Plaintiff Iris Mendez is and was, at all times relevant hereto, the natural daughter of decedent Yareth Aguilar Villagomez and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Yareth Aguilar Villagomez on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights but others' civil rights of great importance.

16.  Plaintiff Raymond Villagomez is and was, at all times relevant hereto, the lawful husband of decedent Yareth Aguilar Villagomez and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Yareth Aguilar Villagomez based on 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights but others' civil rights of great importance.

**B. Defendants**

17. Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs, and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees, including

RCSD employees and the Correctional Health Services (hereinafter also

"CHS") employees, complied with the laws and the Constitutions of the United States and of the

State of California. Defendant COUNTY, through RCSD and CHS, is and was responsible for

ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities,

including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention

Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), John J.

Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively

"COUNTY Jails").

18. Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and,

since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE,

the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible

for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all

COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by

law with oversight and administration of the COUNTY Jails, including ensuring the safety of the

inmates housed therein. Defendant SHERIFF BIANCO is also and was responsible for the

promulgation of the policies and procedures and allowance of the practices/customs pursuant to

which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF

BIANCO is being sued in his individual and official capacities.

19. Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was

employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails,

including the CBDC, for the COUNTY, and he was acting within the course and scope of that

employment. In that capacity, Defendant DELGADO was a policy-making official for the

COUNTY OF RIVERSIDE. During the relevant time, Defendant DELGADO was responsible for

the general management and control of the COUNTY Corrections Operations, with primary

1  authority and responsibility for the operations, staff assignments, program development, personnel

2  supervision, and training, maintenance, and auxiliary inmate services at the jail, subordinate only to

3  the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

4  20. Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was

5  employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails,

6  including the CBDC, for the COUNTY, and he was acting within the course and scope of that

7  employment. In that capacity, Defendant KRACHMER was a government official for the

8  COUNTY OF RIVERSIDE. During the relevant time, Defendant KRACHMER was responsible for

9  the general management and control of the COUNTY Corrections Operations, with primary

10  authority and responsibility for the operations, staff assignments, program

11  development, personnel supervision and training, maintenance, and auxiliary inmate services at the

12  jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant

13  KRACHMER is being sued in his individual capacity.

14  21. Defendant ALYSSA VERNAL (hereinafter also "VERNAL") is and was at all times relevant

15  herein the Corrections Captain at SMITH, one of the highest-level supervisory positions. During the

16  relevant time period, Defendant VERNAL was the Correctional Captain at SMITH, and was

17  primarily responsible for assisting the Sheriff-Coroner with oversight and administration of SMITH,

18  including ensuring the safety of the inmates housed therein. As Correctional Captain, Defendant

19  VERNAL was responsible for the supervision of RCSD and CHC employees and/or agents at

20  SMITH, and for the promulgation of the policies and procedures and allowance of the

21  practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein

22  were committed. Defendant VERNAL also directly supervised Defendant DOES 9 through 19.

23  Defendant VERNAL is being sued in her individual capacity.

24  22. Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT,

SHERIFF BIANCO, DELGADO, KRACHMER, and VERNAL will hereinafter be referred to as the COUNTY DEFENDANTS.

23. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 100 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

24. The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 100 are presently unknown to plaintiffs who therefore sue these defendants by fictitious names. Plaintiff is informed, believes, and thereupon alleges that DOES 1 through 100 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services that were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiff will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiff is informed, believes, and thereupon alleges that each DOE defendant is a resident of California. On information and belief, DOES 1 through 100 were and still are residents of the County of Riverside, California. DOES 1 through 100 are sued in both their individual and official capacity.

25. At all relevant times, DOES 7 through 18 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under the color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the

- 9 -
**COMPLAINT**

COUNTY Jails. DOES 7 through 18 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

26. At all relevant times, DOES 19 through 30 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 19 through 30 were acting under the color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-100, and the employees of the RCSD. DOES 19 through 30 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

27. Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

28. Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each

**COMPLAINT**

Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of the Plaintiffs' and Decedent's constitutional rights and other harm.

29. Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, the defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

30. In doing each of the acts and/or omissions alleged herein, the defendants, and each of them, acted within the course and scope of their employment.

31. In doing each of the acts and/or omissions alleged herein, the defendants, and each of them, acted under the color of authority and/or under the color of law.

**V.**

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

32. On June 20, 2022, Yareth Aguilar Villagomez died of a drug overdose while confined at the Smith Correctional Facility, 1627 Hargrave St, Banning, CA 92220. Another woman who was in Yareth Aguilar Villagomez's pod had died approximately 2 weeks prior from an overdose. That woman died in the arms of Yareth Aguilar Villagomez. Riverside County jails were known to contain large quantities of illegal street drugs that had been smuggled in by Riverside County employees. Defendants knew or should have known that there were drugs in that pod, which should and would have been discovered if defendants properly screened its employees and tested people in that pod.

33. Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Yareth Aguilar Villagomez's dire need for emergency medical intervention went unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Yareth Aguilar Villagomez.

**COMPLAINT**

34. Upon information and belief, the CBDC custodial and medical staff administered inadequate emergency medical care to Yareth Aguilar Villagomez.

35. Due to the great delays in securing adequate emergency medical attention for Richard Matus, Jr., and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, Yareth Aguilar Villagomez did not respond to medical intervention and died on June 20, 2022.

36. Yareth Aguilar Villagomez was forty years old when she died on June 20, 2022, while she was in custody at the Smith Correctional Facility.

37. Yareth Aguilar Villagomez had been granted a diversion program for mental health, something rare to be awarded to someone for a second time.  That was because she had been doing so well.

38. Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

39. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

**FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION**

40. Based upon the principles established in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained Case 5:23-cv-00506 Document 1 Filed 03/22/23 Page 11 of 50 Page ID #:11 by Plaintiffs as set forth herein. To establish municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation.

Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to Monell liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy, and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

A. The COUNTY Jails Experienced Their Deadliest Year in 2022.

41. In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT correctional facilities have resulted in eighteen (18) in-custody deaths. Prior to 2022, Riverside County had not logged more than 12 such deaths in any year since 2005.

42. Yareth Aguilar Villagomez's death is one of eighteen (18) in-custody deaths within the Riverside County correctional facilities during the 2022 calendar year, and was the eighth death that year:

a. Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

b. Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

c. Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

d. Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

e. Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")

f.. Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death:

"Natural")

g.  Richard Matus, Jr. (Date of Loss: August 22, 2022; Manner of Death: "Accident-Overdose)

Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of

Death: "Accident-Overdose")

h. Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death:

"Accident-Overdose")

i. Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death:

"Natural")

j. Mario Solis (Date of Loss: September 3, 2022; Manner of Death:"Accident")

k. Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death:

"Strangulation")

l. Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of

Death: "Suicide/Hanging")

m. Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of

Death: "Homicide Willful")6

n. Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death:

"Pending")

o. Katie Patton (Date of Loss: November 20, 2022 Manner of Death:

"Pending")

p. Ronald Cook (Date of Loss: December 12, 2022 Manner of Death:

"Pending")

43. The deaths include seven (7) overdoses, two (2) homicides resulting from inmate-on-inmate

violence, three (3) suicides, four (4) natural cause deaths, and two (2) pending.

44. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.

B. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.

45. Despite the record-breaking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 125258  and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.

46. The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

47. The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.

48. The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners. Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.

C. California Department of Justice Launches Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails

49. On February 23, 2023, the California Department of Justice (DOJ) announced its decision to

**COMPLAINT**

launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S

DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody

deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately

affecting Latino and African American communities. The raw data and the per capita data make

clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have

died just days after being booked.13 For reference, San Diego County had 19 in-custody deaths in

2022, despite an average daily jail population of 500 more people

than Riverside County.

50. During the press conference, California Attorney General Rob Bonta expressed his grave

concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All

Californians deserve fairness and respect from the institutions that serve them […]. When some

communities don't see or feel they are being treated equitably by law enforcement, it contributes to

distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-

custody deaths and allegations of misconduct — too many families and communities in Riverside

County are hurting and looking for answers. As part of my office's ongoing efforts to

support constitutional policing, the California Department of Justice is opening a civil rights

investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are

worried about crime in your neighborhood, we all benefit when there is action to ensure the

integrity of policing in our state."

51. In response to the California Department of Justice's civil rights investigation in the COUNTY

Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards

the lives lost in his jails: "This investigation is based on nothing but false, and misleading

statements, and straight out lies from activists, including their attorneys. This will prove to be a

complete waste of time and resources."

D. RCSD's History of Indifference Towards Inmates Incarcerated at the RCSD Correctional

Facilities.

52. For well over a decade now, the COUNTY's own Grand Jury, as well as several independent

auditors, have come to the same conclusion: dangerous deficits in healthcare services at the jails

threaten the lives and health of the thousands of men and women they hold.

53. The 2010-11 Grand Jury Report: Riverside County Detention Health Care Administration found

systemic failures in treatment, medication management, record-keeping, and administration of

forced medications, among other areas.

54. The Grand Jury released an updated report in June 2012, noting that mental health staffing has

in fact decreased since its prior year's report.

55. On March 8, 2013, the federal class action lawsuit Quinton Gray, et al. v. County of Riverside,

case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF

RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged

that the COUNTY failed to provide minimally adequate medical and mental health care to the

people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United

Constitution, as well as discrimination against certain inmates with disabilities in

violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

56. The Gray operative complaint (Dkt. 150) alleged the following unconstitutional patterns and

practices permeating the COUNTY Jails:

a. RCSD, by policy and practice, maintains and runs a health care system

that lacks basic elements necessary to provide constitutional care;

b. RCSD, by policy and practice, systematically fails to identify and

diagnose serious conditions, to provide timely care, to administer

appropriate medications, to employ adequate staff to meet prisoners'

- 17 -

**COMPLAINT**

basic needs, to maintain records that allow informed treatment decisions,

to establish legally required confidentiality, and to identify and correct

its own failings;

c. RCSD, by policy and practice, maintains and runs substandard

medication management and administration;

d. RCSD, by policy and practice, is severely understaffed at the COUNTY

Jails;

e. RCSD, by policy and practice, provides substandard medical care to

inmates;

f. RCSD, by policy and practice, provides substandard mental health care

to inmates;

57. On September 2, 2014, the Court granted Plaintiffs' motion for class certification.

58. On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health

care currently provided poses a significant risk of serious harm to inmates confined in the

COUNTY Jails and, if so, to make recommendations for improvements that will provide the

minimum care guaranteed by the U.S. Constitution.

59. On July 15, 2015, the neutrally appointed experts issued reports, determining that the health care

failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan

to address the identified deficiencies in the expert reports.

60. Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree,

Plaintiffs in the Gray class action have had to seek emergency relief from the Court to ensure that

the Consent Decree is enforced.

E. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His

COUNTY Jails.

61. A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" Id.

at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" Id. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." Id.

62. The endemic, ongoing, and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails. SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

63. SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

64. Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

65. On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

66. Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:

(1) Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2) Did they ever demand that their family members not commit crimes in the first place?

(3) Did their parents ever demand they take responsibility for their own actions?

(4) Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

67. SHERIFF BIANCO also blames the inmates themselves: "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money, or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it."

68. In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his correctional

**COMPLAINT**

facilities: "Of course, I'm not happy, this is going to waste our time. Every single one of these inmate deaths was out of anyone's control. The fact of the matter is that they just happened to be in our custody."

**VII.**

**PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS**

**(Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL, and DOES 1-100)**

69. Each Defendant's conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

70. Long before Yareth Aguilar Villagomez's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMERALYSSA VERNAL knew that there existed at a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

71. Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM were repeatedly put on notice of great dangers which existed within the COUNTY Jails through the long history of in custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; the federal class action Quinton Gray, et al. v. County of Riverside, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from their the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY

**COMPLAINT**

voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF's DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the Gray class action complaint.

72. Despite this long history of complete disregard for inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, and ALYSSA VERNAL have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for long time been infested with endemic, ongoing, and unabated risks of injury or death to inmates.

73. The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for the decedent's rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

**VIII.**

**FIRST CAUSE OF ACTION**

**Failure to Protect from Harm, Violation of the Fourteenth Amendment to the United States Constitution (Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Yareth Aguilar Villagomez's As Against DOES 1 through 100**

74. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

75. Defendants COUNTY, RCSD, and DOES 1 through 100 were on notice that their deficient policies, procedures, and practices alleged herein created a substantial risk of serious harm to an inmate in decedent Yareth Aguilar Villagomez's position.

76. Each Defendant could have taken action to prevent unnecessary harm to decedent Yareth Aguilar Villagomez but refused or failed to do so.

77. By policy, procedure, and practice, Defendants COUNTY, RCSD, and DOES 1 through 100

**COMPLAINT**

deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that were attendant to housing decedent Yareth Aguilar Villagomez at SMITH.

78. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL, and DOES 9 through 19 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including SMITH, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

79. Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including SMITH, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

80. Defendants COUNTY, RCSD, and DOES 1 through 100 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

81. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 through 19 failed to properly train and supervise RCSD custody and medical staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including SMITH.

82. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL, and DOES 9 through 19's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems displays evidence of deliberate indifference to the inmates in their care.

83. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL, and DOES 9 through 19 ratified Defendants DOES's actions and inactions amounting to

**COMPLAINT**

constitutional violations.

84. Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Yareth Aguilar Villagomez's housing unit on the date of her death displays evidence of deliberate indifference to the risk of harm to decedent Yareth Aguilar Villagomez.

85. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL, and DOES 9 through 19 ratified Defendants DOES's failure to conduct safety checks and falsification of logs.

86. As a direct and proximate result of the Defendants' conduct, the civil right of Yareth Aguilar Villagomez, as protected by the Fourteenth Amendment of the U.S. Constitution were violated. Further, decedent Yareth Aguilar Villagomez experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

87. Defendants subjected decedent Yareth Aguilar Villagomez to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

88. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

89. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendant COUNTY.

90. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

**IX.**

**SECOND CAUSE OF ACTION**

**Failure to Provide Medical Care, Violation of the Fourteenth Amendment to the United States Constitution (Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Yareth Aguilar Villagomez As Against DOES 1 through 100**

91. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

92. By the actions and omissions described above, Defendants DOES 1 through 100, as alleged herein, violated the Fourteenth Amendment to the United States Constitution, depriving decedent Yareth Aguilar Villagomez through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Yareth Aguilar Villagomez's serious medical needs while in custody as a detainee as secured by the Fourth and/or Fourteenth Amendments.

93. By the actions and omissions described above, Defendants DOES 1 through 100, as alleged herein, including but not limited to their failure to provide decedent Yareth Aguilar Villagomez with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody, constituted deliberate indifference to Yareth Aguilar Villagomez's serious medical needs, health, and safety.

94. As a direct and proximate result of the Defendants' conduct, the civil rights of Yareth Aguilar Villagomez, as protected by the Fourteenth Amendment of the U.S. Constitution were violated. Further, decedent Yareth Aguilar Villagomez experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

**COMPLAINT**

95. Defendants subjected the Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of the Decedent and others would be violated by their acts and/or omissions.

96. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

97. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

98. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**X.**

**THIRD CAUSE OF ACTION**

**Deprivation of the Right to Familial Relationship with Decedent, Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)**

**By Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez As Against DOES 1 through 100**

99. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

100. The aforementioned acts and/or omissions of Defendants DOES 1 through 100 in being deliberately indifferent to decedent Yareth Aguilar Villagomez's protection, safety, and serious medical needs, violating decedent Yareth Aguilar Villagomez's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Yareth Aguilar Villagomez deprived

**COMPLAINT**

Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

101. All the acts of Defendants DOES 1 through 100 and the persons involved were done under the color of state law.

102. The acts and omissions of each Defendant deprived Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their right to a parent-child & husband-wife relationship with decedent Yareth Aguilar Villagomez without due process of law by their deliberate indifference in denying Yareth Aguilar Villagomez protection, safety and access to medical care while suffering a medical emergency at SMITH during her incarceration at SMITH.

103. Defendants DOES 1 through 100 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and RCSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

104. In addition, the training policies of the COUNTY and RCSD were not adequate to train its deputies, agents, and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY Jails custody and medical staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody and medical staff would engage in conduct that would deprive persons

**COMPLAINT**

such as decedent Yareth Aguilar Villagomez, and thus Plaintiffs Raymond Villagomez, Iris

Mendez, Ciannah Villagomez, and Nathan Villagomez, of their rights. These Defendants were thus

deliberately indifferent to the obvious consequences of their failure to train their deputies, agents,

and employees adequately.

105. Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs,

including but not limited to its training policies, caused the deprivation of the constitutional rights

of Yareth Aguilar Villagomez. Each individual Defendant's official policies and/or longstanding

practices or customs are so closely related to Yareth Aguilar Villagomez's injuries and death and

thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

106. Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the

actions and omissions of Defendants DOES 1 through 100, all of whom were custody and medical

staff at the COUNTY Jails, including SMITH, in that he had knowledge of and made a deliberate

choice to approve their unlawful acts and omissions.

107. As a direct and proximate result of the Defendants' conduct, the civil rights of Yareth Aguilar

Villagomez, as protected by the Fourteenth Amendment of the U.S. Constitution were violated.

Further, decedent Yareth Aguilar Villagomez experienced physical pain, severe emotional distress,

and mental anguish, as well as loss of her life and other damages alleged herein.

108. Defendants subjected the Decedent to their wrongful conduct, depriving Decedent of rights

described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the

rights and safety of the Decedent and others would be violated by their acts and/or omissions.

109. As a direct and proximate result of Defendants' acts and/or omissions as set forth above,

Plaintiffs sustained injuries and damages.

110. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable

under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against

**COMPLAINT**

Defendants COUNTY.

111. Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**XI.**

**FOURTH CAUSE OF ACTION**

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(Monell - 42 U.S.C. § 1983)**

**By Plaintiff Estate of Yareth Aguilar Villagomez As Against Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 100**

112. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

113. The unconstitutional actions and/or omissions of Defendants DOES 1 through 100, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and SMITH, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

 a. To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

b. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

 c. To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

d. To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees,

**COMPLAINT**

including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

e. To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f. To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g. To allow, encourage, and require unlicensed, incompetent, inadequately trained, and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether to provide inmates with necessary emergency care and hospitalization;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i. To cover up violations of constitutional rights by any or all the following:

i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails;

iv. By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j. To allow, tolerate, and/or encourage a "code of silence" among enforcement officers, sheriff's

**COMPLAINT**

office personnel, custodial personnel, and medical personnel at the jail whereby an officer or member of the sheriff's office, or medical staff does not provide adverse information against a fellow officer, or member of the sheriff's office or the medical staff;

k. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

114. The unconstitutional actions and/or omissions of Defendants DOES 1 through 100, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and ALYSSA VERNAL:

a. To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b. To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d. To cover up violations of constitutional rights by any or all the following:

i. By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

ii. By ignoring and/or failing to properly and adequately investigate and/or discipline

unconstitutional or unlawful law enforcement activity; and

iii. By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f. To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the Riverside jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

115. Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL and DOES 9 through 19, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 100, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Yareth Aguilar Villagomez, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

116. The unconstitutional actions and/or omissions of Defendants DOES 1 through 100, and other

RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by

policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO,

EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL and DOES 9 through 19.

Plaintiff is informed and believes and thereon alleges that the details of this incident have been

revealed to the authorized policymakers within the COUNTY and RCSD, and that such

policymakers have direct knowledge of the fact that the death of Yareth Aguilar Villagomez's was

the result of deliberate indifference to her rights to be protected and safe while in the custody of the

COUNTY/RCSD, and her rights to have access to medical care when suffering a medical

emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and

RCSD have approved of the conduct and decisions of Defendants DOES 1 through 100 in this

matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for

them, that resulted in the death of Yareth Aguilar Villagomez. By so doing, the authorized

policymakers within the COUNTY and RCSD have shown affirmative agreement with the

individual Defendants' actions and have ratified the unconstitutional acts of the individual

Defendants. Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants

SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL and

DOES 9 through 19, and other policymaking officers for the COUNTY and RCSD were and are

aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff

similar to the conduct of Defendants described herein, but failed to discipline culpable custody and

medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

117. The aforementioned customs, policies, practices, and procedures; the failures to properly and

adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the

unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants

COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent

**COMPLAINT**

Yareth Aguilar Villagomez's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Yareth Aguilar Villagomez to their wrongful conduct, depriving decedent Yareth Aguilar Villagomez of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Yareth Aguilar Villagomez, Plaintiffs, and others would be violated by their acts and/or omissions.

118. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Yareth Aguilar Villagomez and Plaintiffs suffered serious injuries and death, Plaintiffs are entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

**XII.**

**FIFTH CAUSE OF ACTION**

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Yareth Aguilar Villagomez As Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, ALYSSA VERNAL and DOES 21 through 30**

119. Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

120. At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL, and DOES 21 through 30 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

121. Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL and DOES 21 through 30 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the

**COMPLAINT**

respective employees of their agencies, including Defendants DOES 1 through 100, and other

COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Yareth Aguilar

Villagomez's, and others' constitutional rights, which were thereby violated as described above.

122. As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL and

DOES 21 through 30 each permitted and failed to prevent the unconstitutional acts of other

Defendants and individuals under their supervision and control, and failed to properly supervise

such individuals, with deliberate indifference to the rights to safety and protections while

incarcerated at SMITH and the rights to the serious medical needs of *decedent* Yareth Aguilar

Villagomez. Each of these supervising Defendants either directed his or her subordinates in conduct

that violated Decedent's rights or set in motion a series of acts and omissions by his or her

subordinates that the supervisor knew or reasonably should have known would deprive decedent

Yareth Aguilar Villagomez of rights or knew his or her subordinates were engaging in acts likely to

deprive decedent Yareth Aguilar Villagomez's. of rights and failed to act to prevent his or her

subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious

training deficiency that he or she must have known would cause subordinates to violate decedent

Yareth Aguilar Villagomez's rights, and in fact did cause the violation of decedent Yareth Aguilar

Villagomez rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these

supervising Defendants is liable in their failures to intervene in their subordinates' apparent

violations of decedents Yareth Aguilar Villagomez's rights.

123. The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY

and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking

officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO,

DELGADO, KRACHMER, HOLM and DOES 21 through 30, respectively, with deliberate

indifference to Plaintiff's, decedent Yareth Aguilar Villagomez's, and others' constitutional rights,

**COMPLAINT**

which were thereby violated as described above.

124. The unconstitutional actions and/or omissions of Defendants DOES 1through 100, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 21 through 30. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL and DOES 21 through 30 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Yareth Aguilar Villagomez was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and her rights to her serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL, and DOES 21 through 30 have approved and ratified the conduct and decisions of Defendants DOES 1 through 100 in this matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Yareth Aguilar Villagomez. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL, and DOES 21 through 30 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL, and DOES 21 through 30 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

125. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL and DOES 21 through 30 were a moving force and/or a proximate cause of the deprivations of decedent Yareth Aguilar Villagomez's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

126. Defendants subjected decedent Yareth Aguilar Villagomez to their wrongful conduct, depriving decedent Yareth Aguilar Villagomez of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Yareth Aguilar Villagomez, Plaintiff and others would be violated by their acts and/or omissions.

127. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, VERNAL, and DOES 21 through 30 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

**XIII.**

**SIXTH CAUSE OF ACTION**

**Negligence – Wrongful Death**

**Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez As Against All Defendants**

128. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

129. At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Yareth Aguilar Villagomez the duty to act with due care in the execution and enforcement of any right, law, or

- 37 -
**COMPLAINT**

legal obligation.

130. At all times, these Defendants Plaintiffs and decedent Yareth Aguilar Villagomez the duty to act with reasonable care.

131. These general duties of reasonable care and due care owed to Plaintiffs and decedent Yareth Aguilar Villagomez by these Defendants include but are not limited to the following specific obligations:

a. To summon, or transport Decedent to, necessary and appropriate emergency medical care;

b. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

c. To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in a medical crisis with serious medical needs;

d. To conduct state-mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

e. To refrain from abusing the authority granted them by law;

f. To refrain from violating Claimant's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

132. Defendants DOES 1 through 100, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Yareth Aguilar Villagomez.

133. Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individually named defendants, under California Government Code § 815.2.

134. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Yareth Aguilar Villagomez sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

**COMPLAINT**

**XIV.**

**SEVENTH CAUSE OF ACTION**

**Negligence – Medical Malpractice**

**Plaintiff Estate of Yareth Aguilar Villagomez As Against All Defendants**

135. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

136. Decedent Yareth Aguilar Villagomez was under the care and treatment of Defendants DOES 1 through 100, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including SMITH, who were required to examine, treat, monitor, prescribe for and care for her and to provide her with medical attention when she suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Yareth Aguilar Villagomez to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with her condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent detainee Yareth Aguilar Villagomez.

137. Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Yareth Aguilar Villagomez emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Yareth Aguilar Villagomez was provided.

**COMPLAINT**

138. As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

139. Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

**XV.**

**EIGHTH CAUSE OF ACTION**

**Violation of California Government Code § 845.6**

**Plaintiff Estate of Yareth Aguilar Villagomez As Against All Defendants**

140. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

141. Defendants DOES 1 through 100 caused and/or knew and/or should have known that Yareth Aguilar Villagomez's condition was such that she needed immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, having caused and/or knowing and/or having reason to know of Yareth Aguilar Villagomez's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

142. Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individually named defendants,

**COMPLAINT**

under California Government Code § 815.2.

143. As a direct and proximate result of the acts of these Defendants, Plaintiffs and decedent Yareth Aguilar Villagomez were injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

**XVI.**

**NINTH CAUSE OF ACTION**

**Violation of California Civil Code §52.1 (Tom Bane Act)**

**Plaintiff Estate of Yareth Aguilar Villagomez As Against All Defendants**

144. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

145. Plaintiff brings the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. § 377.20 et. seq.

146. By their acts, omissions, customs, and policies, Defendants, each Defendant acting in concert/conspiracy, as described above, while decedent Yareth Aguilar Villagomez was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Yareth Aguilar Villagomez rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

**COMPLAINT**

b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d. The right to emergency medical care as required by California Government Code §845.6.

147. Defendants' violations of decedent Yareth Aguilar Villagomez due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.121 Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Yareth Aguilar Villagomez's rights as described above, Defendants violated Yareth Aguilar Villagomez's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to the Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving the decedent of necessary, life-saving care for his medical needs;

b. With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

c. Subjecting the Decedent to ongoing violations of his rights to prompt care for her serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d. Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

e. Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedents, they are not competent to make;

f. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence,

threat, intimidation, coercion, and ongoing violations of rights as the decedent was here.

148. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Yareth Aguilar Villagomez's rights, or to any legitimate and lawful jail or law enforcement activity.

149. Further, all of the Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

150. Further, each Defendant violated decedent Yareth Aguilar Villagomez's rights with reckless disregard and with the specific intent and purpose to deprive her of her enjoyment of those rights and of the interests protected by those rights.

151. Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individually named defendants, under California Government Code § 815.2.

152. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Yareth Aguilar Villagomez's rights under the United States and California Constitutions, Plaintiffs (as successors in interest for decedent Yareth Aguilar Villagomez) sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants and CFMG, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

**XVII.**

**TENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez As Against Defendant SHERIFF CHAD BIANCO**

**COMPLAINT**

153. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

154. On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

155. Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community:

a. Did they demand that their family members not commit suicide or consume drugs while they were in custody?

b. Did they ever demand that their family members not commit crimes in the first place?

c. Did their parents ever demand they take responsibility for their own actions?

d. Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

156. Defendant SHERIFF BIANCO posted these comments on the public form with the intent to harass and cause Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez mental anguish and turmoil. He knew that given the public forum nature of the Facebook post the family of Yareth Aguilar Villagomez including the present Plaintiffs, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish. Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

157. It was his intention to cause them great mental/psychological pain and anguish he did so

**COMPLAINT**

through these actions.

158. Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez seek compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional misconduct. Plaintiffs have suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

159. The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

160. Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

161. As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiffs Raymond Villagomez, Iris Mendez, Ciannah Villagomez, and Nathan Villagomez sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

**XVIII.**

**ELEVENTH CAUSE OF ACTION**

**Declaratory Relief**

**(28 U.S.C § 2201)**

**Plaintiffs As Against All Defendants**

162. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

- 45 -

**COMPLAINT**

163. There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

164. Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

**XIX.**

**REQUEST FOR RELIEF**

Wherefore, the Plaintiffs respectfully request that the Court enter a judgment as follows:

A. Wrongful death of Yareth Aguilar Villagomez, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C. Yareth Aguilar Villagomez's coroner's fees, funeral, and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D. Violation of Yareth Aguilar Villagomez's constitutional rights, pursuant to Cal.Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E. Yareth Aguilar Villagomez's loss of life, pursuant to federal civil rights law;

F. Yareth Aguilar Villagomez's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G. General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H. Non-Economic Damages, including wrongful death and survival damages, according to proof

**COMPLAINT**

1  plus all further and proper relief;

2  I. Punitive damages as to individual peace officer defendants;

3  J. Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general

4  doctrine);

5

6  K. Penalties under the Tom Bane Act;

7  L. Interest; and

8  M. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§

9  1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5;

10  California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

11  and/or federal law.

12  Attorneys for Plaintiffs,

13  ESTATE OF YARETH AGUILAR VILLAGOMEZ, by and

14  through successors in interest,

15  RAYMOND VILLAGOMEZ,

16

17  IRIS MENDEZ,

18  CIANNAH VILLAGOMEZ, AND

19  NATHAN VILLAGOMEZ, A MINOR, BY AND THROUGH GUARDIAN AD LITEM,

20  RAYMOND VILLAGOMEZ.

21

22

23

24  DATED: June 20, 2023

25  _____

26  JOSEPH C. ROSENBLIT
    Attorney for the Plaintiffs

27

28

**COMPLAINT**